NO JS6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAMAR JACKSON, <br><br>             Plaintiff, <br><br>     v. <br><br> CHASE COLORADO, LLC, a California Limited Liability Company; and DOES 1-10, <br><br>             Defendants. | CV 20-780-RSWL-KS <br><br> **ORDER re: Defendant's Motion to Dismiss Plaintiff's Unruh Claims [14]** |

Plaintiff Shamar Jackson ("Plaintiff") brings this Action for violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act") against Defendant Chase Colorado, LLC ("Defendant"). Currently before the Court is Defendant's Motion to Dismiss Unruh Claims ("Motion") [14]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND**

1

**RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's Unruh Act claim **WITHOUT PREJUDICE**.

## I. BACKGROUND

### A. Factual Background

Plaintiff suffers from limitations caused by an aortic valve repair and scoliosis in his spine, which causes him to have difficulty walking and getting around. Compl. ¶ 1, ECF No. 1. Defendant owned the property located at 1140 E. Colorado St., Glendale, CA 91205 (the "Property"). Id. ¶ 2. Valvoline (the "Business") is located at the Property. Id. ¶ 3.

Plaintiff visited the Property on three occasions in March 2019, May 2019, and October 2019 to patronize the Business. Id. ¶ 12. Plaintiff encountered access barriers related to parking when he visited the Property, including a lack of compliant parking and lack of accessible path of travel. Id. ¶¶ 18, 20-21. Plaintiff personally encountered these barriers. Id. ¶ 23. Plaintiff plans to return to the Property and Business in the future, but is currently deterred from doing so due to the barriers. Id. ¶ 27.

### B. Procedural Background

Plaintiff filed his Complaint [1] on January 24, 2020. On January 30, 2020, the Court Ordered Plaintiff to show cause in writing why the Court should exercise supplemental jurisdiction over Plaintiff's Unruh Act claim ("OSC") [9]. On February 14, 2020, Plaintiff

responded to the Court's OSC ("OSC Response") [11].

Defendant filed the instant Motion [14] on February 28, 2020. Plaintiff opposed [16] on April 3, 2020. Defendant did not file any reply.

## II. DISCUSSION

**A.  Legal Standard**

1.  Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure Rule ("Rule") 12(b)(1) allows a party to seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) "jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the sufficiency of the pleadings, while a factual attack disputes whether the allegations invoke the Court's subject matter jurisdiction. Id. When evaluating a facial challenge, the Court "must accept all of the plaintiff's factual allegations as true." Dreier v. U.S., 106 F.3d 844, 847 (9th Cir. 1996) (citation omitted). Conversely, a factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

"A challenge to the federal court's jurisdiction may be raised at any point during the proceedings." Albrecht v. Lund, 845 F.2d 193, 194 (9th Cir. 1988).

If the court concludes that it lacks subject matter jurisdiction it must dismiss the action. See Fed. R. Civ. Proc. 12(h)(3).

    2.   Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted. A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims. Jackson v. Birmingham Bd. of

1 Educ., 544 U.S. 167, 184 (2005) (quoting Scheuer v.
2 Rhodes, 416 U.S. 232, 236 (1974)). While a complaint
3 need not contain detailed factual allegations, a
4 plaintiff must provide more than "labels and
5 conclusions" or "a formulaic recitation of the elements
6 of a cause of action." Bell Atl. Corp. v. Twombly, 550
7 U.S. 544, 555 (2007). However, a complaint "should not
8 be dismissed under Rule 12(b)(6) 'unless it appears
9 beyond doubt that the plaintiff can prove no set of
10 facts in support of his claim which would entitle him
11 to relief.'" Balistreri, 901 F.2d at 699 (citing
12 Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**B.   Discussion**

In its Motion, Defendant cites both Rule 12(b)(1) and 12(b)(6) as authority for dismissing Plaintiff's Unruh Act Claim. See Mem. of P. & A. in Supp. of Mot. ("Mem.") 7:25-9:28, ECF No. 14-1. The Court will address each of these grounds for dismissal, in turn.

1.   12(b)(1) Motion to Dismiss

With respect to its Motion on the basis of Rule 12(b)(1), Defendant does not maintain that the Court lacks subject matter jurisdiction; rather, Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act Claim. See id. at 18:24-25. Plaintiff's argument for why the Court should decline to exercise supplemental jurisdiction is two-fold: (1) "Plaintiff has filed the Unruh Act Claim in this Court in a evident scheme of

impermissible 'forum shopping' to use federal court as an 'end-around' to evade California's heightened pleading standards, which standards the Complaint does not meet"; and (2) "Plaintiff's state law claim for an outrageous amount of almost a quarter million dollars under the Unruh Act substantially predominates over his federal claim under the Americans With Disabilities Act."  Mot. 2:7-14, ECF No. 14.

   a. *Supplemental Jurisdiction Standard Under 28 U.S.C. § 1367*

 In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are

other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (citation omitted) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." City of Chicago, 522 U.S. at 173. The

supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" Id. (quoting Cohill, 484 U.S. at 350).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. § 1367(c)(1)-(3), San Pedro Hotel Co. v. City of L.A., 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the Gibbs values provide compelling reasons for declining jurisdiction in such circumstances," Exec. Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1558 (9th Cir. 1994). According to the Ninth Circuit, this "inquiry is not particularly burdensome." Id. When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying Gibbs values are best served by declining jurisdiction in the particular case (the compelling reasons)." Id.

b. *California's Unruh Civil Rights Act*

California's Unruh Civil Rights Act provides: "All persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. Cal. Civ. Code § 51. Pursuant to Cal. Civ. Code § 51(f), a violation of the ADA is a per se violation of the Unruh Act. But unlike the ADA, the Unruh Act provides for recovery of monetary damages.[1] A plaintiff may recover actual damages for each and every offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." Id. § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007) (citing Botosan v. Paul McNally Realty, 216 F.3d 827,

---

[1] The Americans with Disabilities Act prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182. "Damages are not recoverable under . . . the ADA—only injunctive relief is available . . . ." Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)). Further, the ADA does not require a showing of "intentional discrimination in order to make out a violation of the ADA." Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 846 (9th Cir. 2004).

835 (9th Cir. 2000)). Further, an Unruh Act claim generally requires proof of intent. Munson v. Del Taco, Inc., 208 P.3d 623, 624 (Cal. 2009). However, if a plaintiff establishes an ADA violation as the basis of his Unruh Act claim, he does not need to prove intent to be entitled to the Unruh Act's monetary damages. Id. at 625.

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." Velez v. Il Fornanio (Am.) Corp., No. 3:18-CV-1840-CAB-MDD, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018). These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1). California's heightened pleading standard requires a plaintiff to include specific facts concerning the plaintiff's claim, including the specific barriers encountered and how the plaintiff was deterred on each date the plaintiff was deterred. See Cal. Civ. Proc. Code § 425.50(a). California law also requires that complaints for construction-related accessibility

claims be verified, and if such complaints are not verified, they are subject to a motion to strike. See id. § 425.50(b)(1).

When California continued to experience large numbers of these actions, California imposed additional limitations on "high-frequency litigants." These additional restrictions became effective on October 15, 2015. Under California law, a "high-frequency litigant" is defined as "[a] plaintiff who has filed ten or more complaints alleged a construction-related accessibility violation within the twelve-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." Id. § 425.55(b)(1). The definition of high-frequency litigant also extends to attorneys. Id. § 425.55(b)(2). In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> According to information from the California Commission on Disability Access, more than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. Forty-six percent of all complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation. This practice unfairly taints the reputation of other innocent disabled consumers who are merely

11

> trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the federal Americans with Disability Act of 1990 (Public Law 101-336).

Id. § 425.55(a)(2). In response to the "special and unique circumstances," id. § 425.55(3), surrounding disability access ligation, California imposed a "high-frequency litigant fee," requiring high-frequency litigants to pay a $1,000 filing fee in addition to the normal fee at the time of filing a complaint. Cal. Gov't Code § 70616.5. California also requires that these complaints allege certain facts, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number of construction-related accessibility claims filed by the litigant in the preceding twelve months, the litigant's reason for being in the geographic area of the defendant's business, and the reason the litigant desired to access the business. See Cal. Civ. Proc. Code § 425.50(a)(4)(A).

        c.   *The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Unruh Act Claim*

For the reasons outlined below, the Court finds that exceptional circumstances and compelling reasons exist to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and that Plaintiff's

12

Unruh Act Claim substantially predominates over his ADA claim.

>    i.  *"Exceptional Circumstances" and "Compelling Reasons" Exist for the Court to Decline to Exercise Supplemental Jurisdiction*

Because California's heightened pleading standards and increased filing fees do not apply in federal court, plaintiffs can circumvent the restrictions California has imposed on construction-related accessibility claims by relying on a grant of supplemental jurisdiction over any Unruh Act claim, when combined with an ADA claim for injunctive relief. The number of construction-related accessibility claims filed in the Central District has significantly increased since California sought to curtail such actions in its state courts:

> According to statistics compiled by the Clerk's Office, in 2013, the first year in which California's initial limitations on such cases were in effect, there were 419 ADA cases filed in the Central District, which constituted 3% of the civil actions filed. Filings of such cases increased from 928 (7% of civil cases) in 2014, the year before the imposition of the additional $1,000 filing fee and additional pleading requirements for high-frequency litigants, to 1,386 (10% of civil cases) in 2016, the first full year of those requirements. The number and percentage of such cases filed in the Central District has increased in each year since California acted to limit the filings by high-frequency litigants, reaching 1,670 (12% of civil cases) in 2017, 1,670 (18% of civil cases) in 2018, and 1,868 cases (24% of civil cases) in the first six months of 2019.

1

2  Garibay v. Rodriguez, No. CV 18-9187 PA (AFMx), 2019 WL
3  5204294, at *4 (C.D. Cal. Aug. 27, 2019).  That the
4  astronomical growth in the filing of these cases in
5  federal court has coincided with California's
6  limitations on construction-related accessibility
7  claims suggests that it is precisely because the
8  federal courts have not adopted California's
9  limitations on such claims that federal courts have
10 become the preferred forum for them.  See Schutza v.
11 Cuddeback, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017)
12 ("It is unclear what advantage—other than avoiding
13 state-imposed pleading requirements—Plaintiff gains by
14 being in federal court since his sole remedy under the
15 ADA is injunctive relief, which is also available under
16 the Unruh Act.").

17      In enacting restrictions and additional fees for
18 the filing of construction-related accessibility
19 claims, California sought to limit the burden these
20 types of cases put on its businesses.  But, in filing
21 these Actions in federal courts, plaintiffs have
22 managed to avail themselves of the state law provided
23 statutory damages all while circumventing California's
24 limitations to reaching such awards.  This situation,
25 as well as the increased burden on federal courts due
26 to the increasing number of these cases, presents the
27 type of "exceptional circumstances" and "compelling

28

reasons" that justify a court's discretion to decline to exercise supplemental jurisdiction over any Unruh Act or other state law claims under 28 U.S.C. § 1367(c)(4).

Further, declining to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim under these circumstances furthers the values of judicial economy, fairness, convenience, and comity. See Schutza v. Cuddeback, 262 F. Supp. 3d at 1031 ("[T]e Court finds it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements . . . as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims . . . ."); see also Gibbs, 383 U.S. at 726.  "It is not, under the Gibbs factors, 'fair' to defendants that plaintiffs may pursue construction-related accessibility claims in this Court while evading the limitations California has imposed on such claims." Garibay, 2019 WL 5204294, at *5.  Allowing federal courts to act as a safe haven for these claims—regardless of whether a particular plaintiff or law firm currently satisfies the definition of a "high-frequency litigant"—is an affront to the comity between federal and state courts.  And, it is within the power of the federal courts to "take measures to discourage forum-shopping, and here . . . the Court

1 finds this to be a compelling reason to decline
2 supplemental jurisdiction." Schutza, 262 F. Supp. 3d
3 at 1031 (citing Hanna v. Plumer, 380 U.S. 460, 467-68
4 (1965)).

5     Here, the Court finds no reason outside of evading
6 California's heightened pleading requirements as to why
7 Plaintiff filed the instant action in federal, rather
8 than state court. Therefore, the Court concludes that
9 "exceptional circumstances" and "compelling reasons"
10 exist to support the Court's decision to decline to
11 exercise supplemental jurisdiction over Plaintiff's
12 Unruh Act claim. See Marsh v. Monreal Properties, LLC,
13 No. CV 19-10270-MWF-GJSX, 2020 WL 2027591, at *5 (C.D.
14 Cal. Mar. 30, 2020) (finding that exceptional
15 circumstances and compelling reasons exist to decline
16 to exercise supplemental jurisdiction because of
17 California's heightened pleading standards, in
18 combination with the increase of construction-related
19 accessibility claims in federal court, even where the
20 plaintiff did not qualify as a high-frequency
21 litigant).

22         ii. *Plaintiff's Unruh Act Claim*
23            *Substantially Predominates Over His*
24            *ADA Claim*

25     Moreover, "if it appears that the state issues
26 substantially predominate, whether in terms of proof,
27 of the scope of the issues raised, or of the
28

comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." Gibbs, 383 U.S. at 726-27.

The ADA "is a purely injunctive statute that does not permit an award of monetary damages." Schutza v. Alessio Leasing, Inc., No. 18CV2154-LAB (AGS), 2019 WL 1546950, at *2 (S.D. Cal. Apr. 8, 2019) (citing Wander, 304 F.3d at 858). The Unruh Act, by contrast, allows a plaintiff to obtain injunctive relief and monetary damages. See Cal. Civ. Code §§ 52, 55.56. Here, Plaintiff seeks injunctive relief, attorneys' fees and costs, and monetary damages in the amount of $4,000.[2] "[C]ourts have found that money damages predominated even where the prayer for money damages was limited to a single count (i.e., $ 4,000)." Schutza v. Alessio Leasing, 2019 WL 1546950, at *3 (citing Molski v. EOS Estate Winery, No. CV 03-5880-GAF, 2005 WL 3952249, at *4 (C.D. Cal. 2005) ("Even though Plaintiffs have submitted a notice of voluntary limitation of damages, seeking only an award of $ 4,000 to [plaintiff], it is

---

[2] Defendant, in its Motion, initially suggested that Plaintiff sought $240,000 in statutory damages based on $4,000 in damages for each of the fifteen "violations" on each of Plaintiff's three alleged visits to the Property. See Mem. 17:7-14. But, in his Opposition, Plaintiff clarified that he seeks only $4,000 in damages in total in this Action. See Opp'n to Mot. ("Opp'n") 17:9, ECF No. 16; Decl. of Shamar Jackson in Supp. of Opp'n ("Jackson Decl") ¶ 11, ECF No. 16-1 ("I only seek $4,000 in damages in this case for one statutory visit.").

17

still clear that the claim for damages is the predominant focus of this lawsuit.")).

Further, as noted, the Unruh Act requires proof of intentional discrimination, while the ADA does not. See Munson, 208 P.3d at 624; Lentini, 370 F.3d at 846. The Unruh Act does not require proof of intent if Plaintiff establishes a violation of the ADA. See Munson, 208 P.3d at 625. However, here, Plaintiff's Complaint relies on Defendant's alleged intentional discrimination. See, e.g., Compl. ¶ 31 ("Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious."). Because the ADA does not require a showing of intentional discrimination, resolution of this issue exclusively "entails application of state-law standards." Schutza v. McDonald's Corp., 133 F. Supp. 3d 1241, 1247 (S.D. Cal. 2015). Accordingly, the Court concludes that Plaintiff's Unruh Act Claim substantially predominates over his ADA claim. See Schutza v. Cuddeback, 262 F. Supp. 3d at 1030 ("Plaintiff places intentionality at the heart of his claims for relief, which when combined with the amount of monetary relief sought, strongly suggests the Unruh Act claim substantially predominates.").

As such, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's Unruh Act

claim, and **GRANTS** Defendant's Motion on the basis of Rule 12(b)(1). In doing so, the Court has not deprived Plaintiff of any remedies, as his ADA claim remains pending before this Court, and Plaintiff may, if he so chooses, pursue his Unruh Act claim in state court[3]—the appropriate forum for such claim under these circumstances. Additionally, any inefficiencies created by this Court's decision to decline to exercise supplemental jurisdiction over the Unruh Act claim are problems resulting from Plaintiff's decision to file this Action in federal, rather than state court. See Schutza v. Alessio Leasing, 2019 WL 1546950, at *4 ("Had he brought this suit in state court, there would have been only one suit pending and he would have been eligible to receive every form of relief he seeks: an injunction, money damages, and attorney's fees. By being "inefficient" and declining to exercise supplemental jurisdiction over his state claim, this Court is simply recognizing that California has a strong interest in interpreting and enforcing its own rules without federal courts serving as a convenient end-around for creative litigants. If that results in

---

[3] Plaintiff encountered the barriers in March, May, and October 2019. As such, the statute of limitations for Plaintiff's Unruh Act claim has not lapsed and Plaintiff is able to bring this claim in state court where it can be properly adjudicated. See Harris v. County of San Diego, CV 18-924-BTM-AHG, 2019 WL 6683367, at *4 (S.D. Cal. Dec. 5, 2019) (finding that Unruh Act claims "are subject to a two-year statute of limitations") (citing Cal. Civ. Code P. § 335.1).

1  occasional inefficiency, it's a worthwhile tradeoff.").
2      2.  12(b)(6) Motion to Dismiss
3      Because the Court **GRANTS** Defendant's Motion on the
4  basis of Rule 12(b)(1) and **DECLINES** to exercise
5  supplemental jurisdiction over Plaintiff's Unruh Act
6  claim, the Court need not address Defendant's Motion
7  under Rule 12(b)(6).

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion and **DECLINES** to exercise supplemental jurisdiction over the Unruh Act claim asserted in Plaintiff's Complaint.  The Court **DISMISSES** this claim **WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

DATED: June  4 , 2020          /s/ Ronald S.W. Lew
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge